Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 25, 2003        Decided July 13, 2004

No. 03-3017

UNITED STATES OF AMERICA,
APPELLEE

v.

BRIAN ERIC CARR,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00106–01)

————

*Edward C. Sussman*, appointed by the court, argued the cause and filed the briefs for appellant.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher*, *Elizabeth Trosman*, and *Barbara E. Kittay*, Assistant U.S. Attorneys.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and EDWARDS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Brian Carr was convicted on five counts of bank robbery. Carr challenges his convictions and his sentence, arguing that the district court erred by: (1) failing to sever each count for a separate trial; (2) instructing the jury that the change in Carr's appearance before trial could be considered as evidence of his consciousness of guilt; and (3) making his 22–month sentence on one count consecutive to his concurrent sentences of 240 months on each of the other four counts. Carr also claims he received ineffective assistance of counsel, in violation of the Sixth Amendment to the Constitution of the United States. Because none of Carr's arguments has any merit, we affirm the judgment of the district court.

## I. Background

On January 30, 2002 Carr entered a branch of the Chevy Chase Bank in downtown Washington, D.C. and passed the teller a note demanding "all the money." Upon exiting the bank Carr was immediately stopped by officers of the Metropolitan Police Department because he fit the description of the suspect in four other bank robberies perpetrated within a few blocks of the Chevy Chase branch. After confirming the bank had just been robbed, the officers set up an identification procedure at which two bank employees identified Carr as the person who had just robbed their branch; questioning of Carr then elicited an admission that he had robbed the branch.

The officers informed Carr that his appearance fit that of the person who had committed the other four robberies. That person was, like Carr, a black male in his 20s or 30s, who had a thick, unkempt beard and wore a heavy jacket and either a baseball cap or a knit hat. The *modus operandi* of all five robberies was also similar, as were the robber's facial expressions, gestures, and demand notes, which in each case

the robber asked be returned to him. Carr denied robbing the other four banks.

Carr was charged with all five bank robberies. He was tried by a jury and convicted on all counts, for which he was sentenced to four prison terms of 240 months, to be served concurrently, and one term of 22 months, to be served consecutively. Carr now appeals both his conviction and the sentence.

## II. Analysis

We take up first Carr's three claims of reversible error by the district court. We then turn to Carr's claim to have received ineffective assistance of counsel at trial.

### A. Severance

Carr argues the district court erred in denying his motion to sever each bank robbery count for a separate trial. Under Rule 14 of the Federal Rules of Criminal Procedure, a "court may order [a] separate trial[ ]" for each offense if it appears the defendant would be prejudiced by "the joinder of offenses" in a single trial. Carr, laboring under the mistaken impression his counsel had not moved for severance before trial, now argues that "[a]s the trial progressed" the district court should have *sua sponte* ordered separate trials for each of the five counts because the "joint trial of extremely similar events, and the manner in which it was tried, created an unfairly prejudicial environment." The Government argues Carr did not suffer any prejudice from the district court's failure to sever each count.

A district court's denial of a defendant's motion to sever may generally be reversed "only upon a finding of clear prejudice and abuse of discretion." *United States v. Levi*, 45 F.3d 453, 455 (D.C. Cir. 1995) (citations and internal quotations omitted). In *Levi*, as in the present case, "the perpetrator [had] used similar notes, made similar statements and gestures, wore similar clothing, and robbed banks . . . in the same general area of the city" in each robbery. *Id.* We explained that a "finding of prejudice is logically precluded if,

had the counts been tried separately, the evidence concerning each count would have been admissible on each other count." *Id.* In that case, as in this, if the defendant had been tried separately on each count, then the same evidence concerning the perpetrator's *modus operandi* would have been admissible in each case under the identity exception to Federal Rule of Evidence 404(b). *Id.; see United States v. Rollins*, 301 F.3d 511, 518–19 & n.3 (7th Cir. 2002) (evidence of *modus operandi* admissible under "identity exception" to 404(b)). Therefore, here, as in *Levi*, there was no prejudice to the defendant from joining the counts in a single trial.

B. Appearance Instruction

Between Carr's arrest and his trial he gained weight, shaved his beard, and began to wear glasses. The Government therefore asked for and the district court gave the jury the following instruction:

> A defendant's attempt to change his appearance after a crime has been committed does not create a presumption of guilt. An innocent person charged with a serious offense may resort to various means, both lawful and unlawful, to avoid prosecution.

> On the other hand, you may consider evidence of the defendant's attempt to change his appearance as tending to prove the defendant's fear of being identified and therefore his consciousness of guilt. You are not required to do so. You should consider and weigh such evidence along with all of the other evidence in the case and give it the weight you think it deserves.

Carr argues this instruction created a "presumption of guilt," the first sentence of the instruction to the contrary notwithstanding. The Government responds that a defendant's attempt to change his appearance is properly the subject of a jury instruction, citing *United States v. Perkins*, 937 F.2d 1397, 1403 (9th Cir. 1991), and *United States v. McKinley*, 485 F.2d 1059, 1061 (D.C. Cir. 1973). We review the district court's instruction for abuse of discretion. *See United States v. White*, 116 F.3d 903, 924 (D.C. Cir. 1997); *United States v. Williams*, 113 F.3d 243, 246 (D.C. Cir. 1997).

Obviously Carr could anticipate that witnesses would be called at trial to identify him as the robber. For whatever reason, Carr made profound alterations to his appearance before trial by gaining weight, shaving his heavy beard, and donning glasses. Almost every witness who was asked nonetheless identified Carr as the robber — and each such witness commented upon the change in his appearance. Because there was "independent evidence indicating that the defendant . . . changed his appearance," the jury could reasonably infer that he did so in order to avoid identification at trial and thereby "evinced [a] consciousness of guilt." *Perkins*, 937 F.2d at 1403. Therefore, the district court's instruction that the jury "may consider evidence of the defendant's attempt to change his appearance" was founded in the record and was not an error.

On appeal, Carr's counsel points out — as trial counsel pointed out to the jury — there could be innocent explanations for the changes in Carr's appearance. Whether to credit those explanations is properly for the jury, however, not for this court.

C. Sentencing

Carr next argues the district court erred in making his 22–month sentence on the fifth count of bank robbery consecutive to his concurrent sentences of 240 months on the other four counts. According to Carr, such "stacking should not be permitted when concurrent sentencing will achieve a sentence within the guideline range," which in this case was 210 to 260 months.* The Government argues the district court was required by § 5G1.2(d) of the Sentencing Guidelines to sentence Carr as it did.

Carr cites no authority to support his argument, and with good reason. Section 5G1.2(d) of the Sentencing Guidelines provides that, because the statutory maximum sentence for bank robbery (240 months) is less than the total punishment (of 262 months) "arrived at for all counts through application

---

* The district court determined that Carr should be sentenced at the top of that range, which determination Carr does not dispute.

of the Guidelines," *United States v. Lott*, 310 F.3d 1231, 1242 (10th Cir. 2002), the "sentence imposed on one or more of the other counts shall run consecutively, but only to produce a combined sentence equal to the total punishment."

Once the district court determined Carr's total punishment should be 262 months, the Guidelines required the court to stack Carr's sentences in order to reach that duration; the command of § 5G1.2(d) "that multiple sentences 'shall' run consecutively in circumstances of this case leaves no room for district court discretion." *United States v. Lafayette*, 337 F.3d 1043, 1050 & n.12 (D.C. Cir. 2003)*; United States v. García-Torres*, 341 F.3d 61, 75 (1st Cir. 2003) (section 5G1.2(d) "mandate[s] the imposition of consecutive sentences in order to achieve (as close as possible) the 'total punishment' "); *United States v. Fuller*, 332 F.3d 60, 67–68 (2d Cir. 2003) (noting error where "total punishment" was 151 months' imprisonment, yet district court stacked only 120– and 30–month sentences).

### D.   Ineffective Assistance of Counsel

Finally, Carr argues his trial attorney's performance was so deficient as to deprive him of his Sixth Amendment right to the assistance of counsel.  Specifically, he complains that trial counsel: (1) failed to move for a severance of counts, either pre-trial or during trial; (2) failed to enter into evidence a prescription that would have shown Carr's eyeglasses were medically necessary and not a cosmetic change Carr made in order to avoid identification at trial; and (3) did not make "sufficient efforts" to locate two individuals the police had suspected, before Carr was apprehended, of committing the first four bank robberies.

To succeed upon a claim of ineffective assistance of counsel the defendant must show: (1) "his lawyer made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  Our practice in this circuit is to remand an ineffective assistance

of counsel claim to the district court "for an evidentiary hearing unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief." *United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003) (citations and internal quotations omitted).

In this case no remand is necessary because it is clear from the record Carr is not entitled to relief. First, Carr's counsel did request a severance of all counts before trial, but the district court (as we have seen) correctly denied the motion. Counsel did not renew the motion during the trial, but failure to renew a non-meritorious motion renders a lawyer's performance efficient, not deficient. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999).

Second, Carr's counsel can hardly be faulted for failing to introduce into evidence Carr's prescription for eyeglasses because Carr himself was responsible for it coming to light only after the close of the evidence. Carr had got the prescription from the D.C. Department of Corrections while awaiting trial but he did not bring it to the attention of his attorney until after the trial record was closed and both sides had presented their closing arguments to the jury.

Finally, there is ample record evidence that Carr's trial counsel did attempt to locate the two men whom the police had suspected, before Carr was apprehended, of committing the first four robberies. Carr's counsel attempted to subpoena both individuals several times at their last known work and home addresses, but neither man could be found. Counsel next moved to have their photographs admitted into evidence, which the district court denied. Then, in his cross-examination of an FBI agent who had investigated the bank robberies, Carr's counsel elicited testimony that the two men in question, who also fit the physical description of the bank robber, had been suspected of committing the other four robberies prior to Carr's arrest. Thus did Carr's counsel do the best he could, with the resources available to him, to put before the jury Carr's defense that one or both of the other suspects, and not Carr, committed the robberies. Therefore, the record conclusively shows Carr's trial attorney did not

provide Carr with constitutionally ineffective assistance of counsel.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

*Affirmed.*